REO MOTORS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6409.    Promulgated September 10, 1947.

*James O. Wynn, Esq.,* and *G. Harold Blattmachr, Esq.,* for the petitioner.

*Leonard Raum, Esq.,* and *Phillip M. Clark, Esq.,* for the respondent.

316

OPINION.

HILL, *Judge*: The loss sustained by petitioner in 1941 by virtue of Reo Sales Corporation stock becoming worthless is a capital loss under section 23 (g) of the Internal Revenue Code as that section was con-

stituted in 1941. However, under the provisions of section 23 (g)[1] as that section was constituted in 1942, if the same loss had occurred in 1942 it would not have been a capital loss, but an ordinary loss. If the loss in question is a capital loss, then it must be excluded from a net operating loss computation by virtue of section 122 (d) (4) of the code.[2] If, however, the loss in question is an ordinary loss, then it may be included in the deductions entering into the net operating loss computation. The question presented, therefore, is whether section 23 (g) as constituted in 1941, or as constituted in 1942, the year of the net operating loss deduction, governs the character of the 1941 stock loss as a capital loss or as an ordinary loss for purposes of section 122 (d).

Petitioner contends that section 23 (g) as constituted in 1942 governs and that the 1941 stock loss is, therefore, an ordinary loss and, as such, is available for inclusion as a deduction in computing the net operating loss for 1941. Petitioner relies on our decision in *Moore, Inc.*, 4 T. C. 404; affd., 151 Fed. (2d) 527, as supporting its contention. Respondent contends that section 23 (g) as constituted in 1941 governs and that the 1941 stock loss is, therefore, a capital loss and, as such, must be excluded as a deduction in computing the net operating loss for 1941. We think respondent's position is correct.

Section 122 (d),[3] set forth in the margin, enumerates certain exceptions, additions, and limitations as adjustments which have to be made

[1] Section 23 (g) (4) provides in part that "stock in a corporation affiliated with taxpayer shall not be deemed a capital asset." Section 23 (g) as constituted in 1941 contained no such provision.

Subdivision (4) of section 23 (g) was added by section 123 of the Revenue Act of 1942. In the same act section 101 provides that "Except as otherwise expressly provided, the amendments made by this title [Title I] shall be applicable only with respect to taxable years beginning after December 31, 1941."

[2] Section 122 (d) (4), as constituted in 1941, provides that long term capital gains and losses shall be taken into account without regard to the provisions of section 117 (b). It further provides that long term capital losses shall not exceed the amount includible on account of long term capital gains and that short term capital losses shall not exceed the amount includible on account of short term capital gains. This section was amended in 1942 so as to limit capital losses to the amount of capital gains without regard to long or short term aspects. This change has no importance in the instant case, because petitioner had no capital gains of any kind in 1941.

[3] Section 122 (d), as constituted in 1942, provides as follows:

"(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

"(1) The deduction for depletion shall not exceed the amount which would be allowable if computed without reference to discovery value or to percentage depletion under section 114 (b) (2), (3), or (4);

"(2) There shall be included in computing gross income the amount of interest received which is wholly exempt from the taxes imposed by this chapter, decreased by the amount of interest paid or accrued which is not allowed as a deduction by section 23 (b), relating to interest on indebtedness incurred or continued to purchase or carry certain tax-exempt obligations;

"(3) No net operating loss deduction shall be allowed;

"(4) Gains and losses from sales or exchanges of capital assets shall be taken into account without regard to the provisions of section 117 (b). As so computed the amount

in computing the net operating loss deduction for any given year beginning after December 31, 1941. The particular limitation or adjustment with which we are here concerned is the one set forth in subdivision (4) of section 122 (d), relating to capital gains and losses. We are faced with the question of whether subdivision (4), added to section 23 (g) by the Revenue Act of 1942, renders the provisions of subdivision (4) of section 122 (d) inapplicable to the stock loss in question in computing net operating loss in 1941 for a carry-over deduction in 1942.

It will be borne in mind that we are here considering not a net operating loss sustained in 1942, but a deduction in the year 1942 of a claimed net operating loss sustained in 1941. Under the law as it existed in 1941 the stock in respect of which the loss in question was sustained was a capital asset, but if the stock in question had been similarly held in 1942, it would not be a capital asset because of the adding in that year of subdivision (4) to section 23 (g). Since the operative effect of subdivision (4) of section 23 (g) is confined to tax years beginning after December 31, 1941, it appears that whether the stock loss here in question was a capital loss or an ordinary loss for the purpose of computing a net operating loss in 1941 is determinable under the law as it existed in 1941. Should it be determined that there was a net operating loss in 1941, the deductibility thereof in 1942 would be determinable under section 122 subject to the exceptions, additions, and limitations set forth in subparagraph (d) thereof as it existed in 1942. We have seen above that section 122 (d) (4) excludes capital losses in excess of capital gains in the computation of a deduction for a net operating loss. Also, under section 122 as it existed in 1941, in the computation of a net operating loss deduction, capital losses, both long term and short term, are excluded to the extent that they respectively exceed long term and short term capital gains.

Furthermore, it appears that under section 23 (g) as it existed in 1941 the stock loss here in question was a capital loss. Under the limitation of section 101 of the Revenue Act of 1942, section 23 (g)

---

deductible on account of such losses shall not exceed the amount includible on account of such gains.

"(5) *Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall* (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection.

"(6) There shall be allowed as a deduction the amount of tax imposed by Subchapter E of Chapter 2 paid or accrued within the taxable year, subject to the following rules—

* * * * * * *"

(4) of the 1942 Act was "applicable only with respect to taxable years beginning after December 31, 1941." Hence, the stock loss of 1941 did not lose its character as a capital loss by virtue of section 23 (g) (4) of the 1942 Act.

It will be borne in mind that section 122 (d) relates solely to the deduction of a net operating loss carry-over and provides in subdivision (4) that there shall not be included in the computation of such deduction capital losses in excess of capital gains. It does not purport to define capital loss or capital gain or operate in any way to change the character thereof retroactively or otherwise.

Whether capital losses arising in 1941 constitute an element of adjustment in computing a net operating loss for 1941 for purposes of a net operating loss deduction in 1942 depends on whether section 122 (d) as constituted in 1942 so provides. But whether an item of gain or loss arising in 1941 is capital or ordinary depends on the law of 1941. In *Moore, Inc., supra,* we held that, in determining whether there was a deductible net operating loss carry-over to 1942 from 1941 under section 122 (d) (4) as it existed in 1942, there should be eliminated from the gross income of 1941 the amount of capital gains to the extent they were offset by capital losses, irrespective of the long term or short term character thereof as provided in the above designated section. The determination there did not involve the question we have here, namely, whether subdivision (4), added by the the 1942 Act to section 23 (g) as it existed in 1941, retroactively converted a capital asset to a noncapital asset and hence, in the instant case, a capital loss to an ordinary loss.

The *Moore* case dealt only with the question of whether section 122 (d) (4) of the 1942 Act, instead of section 122 (d) (4) as it existed in 1941, governed the treatment to be accorded gains and losses arising from sales or exchanges of capital assets in determining whether there was a deductible net operating loss carry-over from 1941 to 1942. It did not involve the question of whether a change was retroactively effected in the character of such assets from capital to noncapital assets by virtue of the provisions of sections 23 (g) (4) and 122 (d) (4) as they existed in 1942. In fact, section 23 (g) (4) was not involved in the question in the *Moore* case. Hence, the decision in the *Moore* case is not a precedent for determining the effective date or other operative effect of section 23 (g) (4).

It is our opinion, and we so hold, that the effect of section 23 (g) (4) is prospective only, beginning with the year 1942; also, that the character of the loss here in question is determined by the law existing in 1941 as a capital loss and must be accordingly treated in determining

whether under section 122 (d) (4) of the 1942 Act there was a deductible net operating loss carry-over from 1941 to 1942. The obvious effect of this holding is to deny the net operating loss deduction claimed by petitioner.

Other arguments are made by both parties, based on various canons of construction. These arguments have been carefully considered, but do not alter the conclusion we have reached herein.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

LEECH, *J.*, dissenting: In my opinion the *ratio decidendi* in *Moore, Inc.*, 4 T. C. 404; affd., 151 Fed. (2d) 527, applies with equal force here and requires the opposite conclusion to that of the majority.