IRVING-KOLMAR CORPORATION, AN ILLINOIS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88967. Filed January 31, 1961.

*William A. Romanek, Esq.*, for the petitioner.
*Andrew S. Coxe, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner filed a motion on October 24, 1960, for judgment on the pleadings on the ground that the petition does not allege facts sufficient to show error in the Commissioner's determination. Hearing on that motion was set for November 30, 1960. The petitioner filed a memorandum in opposition to the motion on November 17, 1960. The Court entered an order continuing the hearing on the motion to January 11, 1961, and calling attention to the application of the 1939 as opposed to the 1954 Internal Revenue Code and to the fact that the petition alleged insufficient facts to permit a decision of the issue under the 1939 Code. The order also granted the petitioner 30 days within which to file an amended petition or show cause why the motion for judgment on the pleadings should not be granted.

The petitioner filed another memorandum on January 9, 1961, asking an extension to January 16, 1961, within which to file "an Amended Petition setting forth the specific sections of the 1939 Code and cita-

tions thereon under which Petitioner in counsel's opinion, Petitioner [*sic*] is allowed to deduct the net operating loss of a predecessor merged corporation." Of course, the real need for any amendment was to allege additional facts and not to cite authorities which have no place in the petition. The Court on January 11, 1961, continued the matter to January 18, 1961, to permit the petitioner to file an amended petition. However, the petitioner has never amended its original petition but filed on January 17, 1961, a third memorandum in which it states that it does not wish to file an amended petition. The question must be decided, then, upon the facts alleged in the petition.

The petition, in naming "Home," inconsistently refers to it as "Corporation" and as "Company" but we assume this is inadvertent and that there is but one corporation intended.

The Commissioner determined deficiencies as follows:

| Year | Amount |
|------|--------|
| 1953 | $3, 658. 86 |
| 1954 | 6, 037. 66 |
| 1955 | 5, 539. 81 |
| 1956 | 1, 837. 44 |

He explained in the notice that net operating loss deductions claimed for each year in stated amounts were unallowable. This action is assigned as the only error in the petition. The facts alleged to sustain this allegation, and admitted for the purpose of the motion, are that the net operating losses were sustained by Home Equipment Manufacturing Company (hereafter called Home), all of the stock of which was owned and controlled by the same persons who were stockholders of the petitioner; Home operated its business (manufacturing of wood items) on property owned by the petitioner; Home and the petitioner, a "real estate corporation," were merged as of December 31, 1953, with no change in stockholders; thereafter, for a few months, the petitioner continued the curtailed operations of Home and "subsequently" discontinued the business of Home.

Home, at the time it sustained the losses, was a separate corporation from Irving-Kolmar Corporation and the two were engaged in different businesses. There is no allegation or suggestion that they filed or could have filed a consolidated return for 1953. The petitioner is contending that the losses of one corporation from manufacturing during the year at the end of which the merger took place, may be used to offset income of a separate corporation earned prior to the merger and the income of the successor-by-merger corporation earned subsequent to the merger, all such income being from a different business from that of the loss corporation.

The Supreme Court of the United States has held contra as to part of that contention in *Libson Shops* v. *Koehler*, 353 U.S. 382, which was under the 1939 Code and did not involve any tax avoidance. The following appears on page 386 of that opinion:

The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year. There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business.

The Court emphasized, on p. 390, that the income against which the offset is claimed must be produced by substantially the same business which incurred the losses and concluded that the statutes do not "suggest that they should be construed to give a 'windfall' to a taxpayer who happens to have merged with other corporations."

The petitioner cites *Hutchens Metal Products, Inc.* v. *Bookwalter*, 174 F. Supp. 338, but that case was reversed by the Court of Appeals for the Eighth Circuit, 281 F. 2d 174, which followed the *Libson* case on facts similar to those here present.

The petitioner contends that the 1954 Code controls and under sections 381 and 382 thereof it is entitled to carry over the 1953 net operating loss of Home. There is a general provision in the 1954 Code that it shall apply only to taxable years beginning after December 31, 1953. Sec. 7851(a). Its provisions do not apply to a net operating loss deduction for 1953, the first year here involved. Cf. *Herbert J. Kent*, 35 T.C. 30. Furthermore, the petitioner falls far short of demonstrating that there is any applicable provision of the 1954 Code under which it is entitled to carry over in any way the 1953 net operating loss of Home. The effective date of part III of that Code, containing the reorganization provisions, is June 22, 1954. Section 394 provides that sections 381 and 382(b) shall apply to "reorganizations, the tax treatment of which is determined under this Code." The "tax treatment" of the reorganization (merger) which took place on December 31, 1953, is not "determined under this [1954] Code." Thus, the petitioner has not indicated any statutory basis for its contention and there is no occasion to consider the complications of sections 381 and 382 of the 1954 Code.

*Decision will be entered for the Commissioner.*